UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE C. FENG AND TOM FENG,<br><br>               Plaintiffs,<br>v.<br><br>THE GOLDFIELD CORPORATION,<br>DAVID P. BICKS, HARVEY C. EADS, JR.,<br>JOHN P. FAZZINI, DANFORTH E.<br>LEITNER, and STEPHEN L. APPEL<br><br>               Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF<br>FEDERAL SECURITIES LAWS** |

George C. Feng and Tom Feng ("Plaintiffs"), by and through their attorneys, allege the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiffs, which are alleged upon personal knowledge:

**BACKGROUND**

1. This action concerns a proposed transaction announced on November 24, 2020 pursuant to which The Goldfield Corp. ("Goldfield or the "Company") will be acquired by First Reserve XIV Advisors, L.L.C. ("First Reserve").

2. On November 24, 2020, Goldfield's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"), pursuant to which First Reserve commenced a tender offer to purchase all of Goldfield's outstanding common stock for $7.00 per share in cash (the "Tender Offer")

3. On December 1, 2020, in order to convince Goldfield's stockholders to tender their shares, defendants authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Solicitation Statement") with the United

States Securities and Exchange Commission ("SEC").

4. The Solicitation Statement omits material information with respect to the Tender Offer, which renders the Solicitation Statement false and misleading. Accordingly, Plaintiffs alleges herein that defendants violated Sections 14(d), 14(e), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

5. In addition, the Tender Offer is scheduled to expire one-minute following 11:59 p.m., Eastern Time, on December 29, 2020 (the "Expiration Time"). It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the Expiration Time so they can properly determine whether to tender their shares.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiffs allege violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous

activities that had an effect in this District. Additionally, the Company's common stock trades on the NYSE, which is headquartered in this District.

## PARTIES

9. Plaintiffs are, and have been at all relevant times, owners of Goldfield common stock and have held such stock since prior to the wrongs complained of herein.

10. Defendant Goldfield is incorporated in Delaware and maintains its principal offices at 1684 W. Hibiscus Boulevard, Melbourne, Florida 32901. The Company's common stock trades on the New York Exchange under the symbol "GV."

11. Defendant David P. Bicks has served as a member of the Board since 2012.

12. Defendant Harvey C. Eads, Jr. has served as a member of the Board since 1999.

13. Defendant John P. Fazzini has served as a member of the Board since 1984.

14. Defendant Danforth E. Leitner has served as a member of the Board and since 1985.

15. Defendant Stephen L. Appel has served as a member of the Board and since 2017.

## FACTS

16. Goldfield, together with its subsidiaries, provides electrical infrastructure construction services primarily to electric utilities and industrial customers in Southeast and mid-Atlantic regions of the United States and Texas. It also offers electrical contracting services, including the construction of transmission lines, distribution systems, drilled pier foundations, substations, and other electrical services. In addition, the Company is involved in the acquisition, development, management, and disposition of detached single-family homes, townhomes, and condominiums in Brevard County, Florida. Goldfield was founded in 1906 and is based in Melbourne, Florida.

17.     On November 24, 2020, the Company announced the Proposed Transaction:

MELBOURNE, Fla. and STAMFORD, Conn., Nov. 24, 2020 (GLOBE NEWSWIRE) -- The Goldfield Corporation ("Goldfield" or the "Company") (NYSE American: GV), a leading provider of electrical transmission and distribution maintenance services for utility and industrial customers, today announced it has entered into a definitive merger agreement under which an affiliate of First Reserve has agreed to acquire all outstanding shares of Goldfield for
$7.00 per share in cash, pursuant to a cash tender offer. This represents a 64% premium to Goldfield's closing stock price on November 23, 2020 and a 57% premium to the 30-day volume- weighted average price of $4.46 as of the same date. The transaction, which was unanimously approved by Goldfield's Board of Directors, implies a total enterprise value for Goldfield of approximately $194 million, including net debt, and is not subject to any financing contingency.

Commenting on the agreement, Goldfield's Board of Directors stated, "We fully support this transaction and are excited about the long-term opportunities this presents for the future of Goldfield and the immediate value it provides for our shareholders. First Reserve has a highly successful track record of working with services companies that operate in the utility sector to drive sustainable growth, and we are confident they will be a great partner for our customers and employees as they move forward together."

Jeff Quake, Managing Director at First Reserve, commented, "This investment highlights First Reserve's continued commitment to building leading platforms which play a crucial role in maintaining and enhancing mission-critical infrastructure. As the domestic power generation mix continues to diversify, including the transition to increasingly adopt sustainable sources of electricity such as renewables, we believe Goldfield is well positioned to participate in these long-term trends driven by increased focus on ESG, reliability and asset integrity."

**Transaction Details**

The transaction will be completed through a cash tender offer for all of the outstanding common shares of Goldfield for $7.00 cash per share, followed by a merger in which the remaining common shares of Goldfield will be converted into the right to receive the same cash price per share paid in the tender offer. Goldfield's Board of Directors will unanimously recommend that all shareholders tender their shares in the offer. The transaction is conditioned upon satisfaction of the minimum tender condition, which requires that shares representing more than 50% of Goldfield's outstanding shares be tendered, as well as other customary closing conditions, including expiration of the applicable waiting period under the Hart- Scott-Rodino Antitrust Improvements Act of 1976. The estate of Goldfield's former CEO John Sottile, which has beneficial ownership and control over approximately 8.5% of the shares outstanding, has agreed to tender those

shares into the offer. The transaction is expected to close by January 2021.

The merger agreement will be attached as an exhibit to the Company's report on Form 8-K to be filed with the U.S. Securities and Exchange Commission (the "SEC"), and is also available on the Company's website at *http://www.goldfieldcorp.com*.

Stifel is serving as financial advisor and K&L Gates LLP is serving as legal advisor to Goldfield. Simpson Thacher & Bartlett LLP is serving as legal advisor to First Reserve.

\* \* \*

18. The Offer Price is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Tender Offer.

19. It is therefore imperative that the Company's common stockholders receive the material information that defendants have omitted from the Solicitation Statement so that they can meaningfully assess whether to tender their shares.

20. Section 6.2 of the Merger Agreement provides for a no solicitation clause that prevents Goldfield from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

> Section 6.2    Acquisition Proposals; Change in Recommendation.
>
> (a)Except as permitted by this Section 6.2, during the Pre-Closing Period, the Acquired Companies and their respective directors and officers shall not, and shall not authorize their other Representatives to, and shall direct and cause them not to (i) initiate, solicit, propose, knowingly induce or knowingly encourage or knowingly facilitate (including by providing any information) any Acquisition Proposal, including any inquiries or the submission of any proposals or offers which could reasonably be expected to lead to an Acquisition Proposal, (ii) other than informing Third Parties of the existence of the provisions contained in this Section 6.2, engage in, continue or otherwise participate in negotiations or discussions with, or provide access to its properties, books and records or furnish any non-public information (or access thereto) concerning the Company or any of the Company Subsidiaries to, any Third Party in connection with, relating to or

for the purpose of encouraging or facilitating or that could reasonably be expected to lead to,an Acquisition Proposal, (iii) recommend, enter into or execute any Contract, letter of intent, acquisition agreement, agreement in principle, memorandum of understanding or similar agreement with respect to any Acquisition Proposal, (iv) approve, endorse or recommend, or propose publicly to approve, endorse or recommend any Acquisition Proposal, (v) waive, terminate, modify or fail to enforce any "standstill" or similar provision or obligation of a Person (other than Parent or its Affiliates) with respect to the Company or its Subsidiaries or (vi) approve, authorize or agree to do any of the foregoing. Immediately following the execution of this Agreement, the Acquired Companies and their respective directors and officers shall, and shall direct and cause their respective Representatives to, (A) cease and cause to be terminated any solicitation and any and all existing discussions or negotiations with any Person conducted heretofore with respect to any Acquisition Proposal or any inquiry or request for information that could reasonably be expected to lead to, or result in, an Acquisition Proposal, (B) terminate access by any Third Party to any physical or electronic data room relating to any potential Acquisition Proposal and (C) deliver written notice to each such Person requesting that any such Person (other than Parent, Merger Sub and their respective Representatives) promptly return or destroy all confidential information regarding the Company and its Subsidiaries. Notwithstanding clause (v), the Company shall be permitted to grant limited waivers of, and not enforce, any standstill provision or similar provision that has the effect of prohibiting the counterparty thereto from making an Acquisition Proposal to the Company Board to the extent that the Company Board determines in good faith, after consultation with outside counsel, that the failure to grant such limited waiver or to not enforce such provision would be inconsistent with Company Board's fiduciary duties under Applicable Law.

21. In addition, Section 9.4(b) of the Merger Agreement requires Goldfield to pay a $5,654,000.00 "termination fee" in the event this agreement is validly terminated by Goldfield and improperly constrains the Company from obtaining a superior offer.

22. It is therefore imperative that Goldfield's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

23. Defendants filed the Solicitation Statement with the SEC in connection with the Tender Offer. As alleged herein, the Solicitation Statement omits material information, which renders the Solicitation Statement false and misleading.

24. First, the Solicitation Statement omits material information regarding Goldfield's

financial projections.

25. With respect to Goldfield's financial projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: (a) PCA EBITDA and (b) Adj. Cash Earnings Before Tax (for Bayswater), but fails to disclose: (i) the line items used to calculate the non-GAAP measures; or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures.

26. The disclosure of projected financial information is material information necessary for Goldfield stockholders to gain an understanding of the basis for any projections as to the future financial performance of the company. In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the Company's financial advisors rendered in support of any fairness opinion.

27. Second, the Solicitation Statement omits material information regarding the analysis performed by the Company's financial advisor Stifel, Nicolaus & Company, Incorporated ("Stifel") in connection with the Tender Offer.

28. With respect to Stifel's *Selected Comparable Public Company Analysis*, the Solicitation Statement fails to disclose the individual metrics and multiples for the individual companies observed in the analysis. This information must be disclosed to make the Solicitation Statement not materially misleading to Goldfield stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

29. With respect to Stifel's *Selected Precedent Transactions Analysis*, the Solicitation Statement fails to disclose the individual metrics and multiples for the transactions observed in the analysis. This information must be disclosed to make the Solicitation Statement not materially misleading to Goldfield stockholders and provide stockholders with full and relevant

information in considering whether to tender their shares.

30. With respect to Stifel's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the basis for applying a discount rate of 14.5% to calculate the projected unlevered free cash flow for October 2020 through fiscal year 2024; (ii) the basis for applying a range of discount rates from 12.5% to 14.5% to calculate the present values of the unlevered cash flows and terminal values; (iii) the terminal value of the Company; (iv) the basis for applying a range of perpetual growth rates of 2.5% to 3.5%; and (v) the Company's unlevered cash flows used in the analysis. This information must be disclosed to make the Solicitation Statement not materially misleading to Goldfield stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

31. With respect to Stifel's *Bayswater NPV Analysis*, the Solicitation Statement fails to disclose the basis for applying a discount rate of 14.5% to calculate the projected unlevered free cash flow for October 2020 through fiscal year 2022. This information must be disclosed to make the Solicitation Statement not materially misleading to Goldfield stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

32. The omission of the above-referenced material information renders the Solicitation Statement false and misleading.

33. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

**CLAIMS FOR RELIEF**

**COUNT I**

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(e) OF THE EXCHANGE ACT)**

34. Plaintiffs incorporate each and every allegation set forth above as if fully set

forth herein.

35. Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

36. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

37. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

38. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Tender Offer as set forth above.

39. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

40. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Tender Offer. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

41. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

42. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

43. Because of the false and misleading statements in the Solicitation Statement, plaintiffs are threatened with irreparable harm.

44. Plaintiffs have no adequate remedy at law.

## COUNT II

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(d) OF THE EXCHANGE ACT AND RULE 14d-9 PROMULGATED THEREUNDER)

45. Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

46. Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

47. Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

48. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

49. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

50. The omissions in the Solicitation Statement are material to plaintiffs, and who will be deprived of their right to make a fully informed decision with respect to the Tender Offer if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

51. Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiffs contend are materially incomplete and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Tender Offer. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Tender Offer. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

55. In addition, as the Solicitation sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) and 14(d) and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiffs will be irreparably harmed.

58. Plaintiffs have no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Tender Offer;

B. In the event defendants consummate the Tender Offer, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(e) and/or 20(d) of the 1934 Act, as well as Rule 14d-9 promulgated thereunder;

E. Awarding Plaintiffs the costs of this action, including reasonable allowance for Plaintiffs' attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues so triable.

Dated: December 11, 2020

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiffs*